UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NOVUM STRUCTURES, LLC,

        **Plaintiff,**

        v.                                              Case No. 16-CV-1568

LARSON ENGINEERING, INC. and
IRONSHORE SPECIALTY INSURANCE CO.

        **Defendants.**

# REPORT AND RECOMMENDATION THAT THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BE DENIED

**1. Background and Facts**

With its granite exterior and five-story Corinthian columns, Northwestern Mutual's neoclassical headquarters has been an imposing Milwaukee landmark since 1914. Over the subsequent century the company expanded its footprint with the construction of additions and adjacent buildings. In 2014 Northwestern Mutual undertook a project to significantly alter its Milwaukee campus. The project included the demolition of a 16-story building and the construction of a 32-story tower in its place. The project also included enclosing the courtyard of the original headquarters building with a glass covered atrium supported by a steel structure.

Novum Structures, LLC was hired to build the glass enclosed atrium. (ECF No. 32, ¶ 8.) As it had done many times since at least 1999, Novum called on Larson Engineering, Inc. to assist in the project. (ECF No. 32, ¶ 10.) The two companies had no written contract (ECF Nos. 32, ¶ 13; 35-1, ¶ 12), and they now dispute the nature of Larson's engagement. Novum contends Larson was the "engineer of record" on the atrium project. (ECF No. 32, ¶ 12.) Larson asserts that it was hired merely to conduct a peer review of Novum's design drawings to ensure they conformed to the local building code. (ECF Nos. 32, ¶ 12; 35-1, ¶ 21.)

In December 2014 Novum prepared a set of design drawings and supporting calculations for the atrium's steel structure. (ECF No. 32, ¶ 15.) Novum sent the documents to Larson engineer Kevin Schultz, who reviewed them and responded with comments and questions. (ECF No. 32, ¶¶ 16-17.) After his comments and questions were resolved by Novum, Schultz arranged to have his colleague, Kesh Ramdular, stamp (sometimes called seal) the drawings and calculations. (ECF No. 32, ¶ 18.) According to Novum, stamping is the process by which the engineer of record, after reviewing the structural design documents, affirms that the design of the structure is adequate and safe. (ECF No. 32, ¶ 23.) Larson disputes that it was the engineer of record; it says that the stamp merely reflected Ramdular's conclusion that the drawings met the local building code. (ECF No. 31 at 2.) Ramdular stamped the drawings

because, unlike Schultz, he was licensed in Wisconsin as a professional engineer. (ECF No. 32, ¶ 19.)

The drawings that Larson reviewed did not specify the sort of weld that would be used with respect to the roof trusses where they connected to the edge beam. (ECF No. 32, ¶ 34.) Novum designed those welds itself and had another company fabricate the trusses and beams in accordance with drawings that Novum did *not* provide to Larson for its review. (ECF No. 35-1, ¶¶ 9-10, 39.)

In January 2016, during construction, ice built up in the connection boxes, "which are locations where certain trusses connect to the edge beams." (ECF No. 35-1, ¶ 9.) The ice build-up led to cracks in the welds. (ECF No. 35-1, ¶ 27.) Novum does not claim that Larson was negligent for failing to include a weld design that would have sustained the ice pressures (ECF No. 35 at 2, 10); it appears undisputed that any weld design would have cracked given the ice infiltration (ECF No. 31 at 8-9, 17-19). The ice build-up was merely fortuitous in that it spurred an investigation which revealed that the design included welds that were insufficient for the loads. (ECF Nos. 32, ¶ 39; 35 at 2, 10-11.)

Novum filed this action alleging Larson was negligent and breached its contract with Novum when it stamped "plans that called for truss welds that were insufficient to meet the structural demands of the building to be constructed." (ECF No. 1, ¶¶ 19, 24.)

3

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## 3. Analysis

### 3.1. Negligence

Under Wisconsin common law, a professional such as an engineer has a duty to exercise "the standard of care ordinarily exercised by the members of that profession." *Milwaukee Partners v. Collins Eng'rs, Inc.*, 169 Wis. 2d 355, 362, 485 N.W.2d 274, 277 (Ct. App. 1992) (quoting *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 489, 214 N.W.2d 764, 769 (1974); *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 111-12, 362 N.W.2d 118,

128 (1985)); *see also Shipman v. State*, 43 Wis. 381, 390 (1877); Restat 2d of Torts, § 299A (1979). But that does not mean that an engineer's drawings must be perfect and free from mistakes or defects. *Shipman*, 43 Wis. at 390-91; *see also Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 90 (Ind. Ct. App. 2018) (quoting *Mayberry Cafe, Inc. v. Glenmark Constr. Co.*, 879 N.E.2d 1162, 1173 (Ind. Ct. App. 2008));

According to Novum, by stamping the drawings Novum provided to it, Larson acknowledged that it was the engineer of record. As a result, it bore overall responsibility for the design of the atrium. (ECF No. 26 at 12 (all citations reflect the ECF pagination).) "An engineer of record like Larson must review and approve the shop and erection drawings for a steel structure, including any weld connections and their effects on the structural system at issue, as the engineer of record has responsibility for the adequacy and safety of the entire structure, no matter who designed the components and connections of the structure…. Passively reviewing only the drawings Novum submitted did not suffice." (ECF No. 35-1, ¶ 10.) This duty was nondelegable, meaning Larson alone bears responsibility for any error in the drawings. (ECF No. 26 at 13 (citing *Arsand v. Franklin*, 83 Wis. 2d 40, 54 n.8, 264 N.W.2d 579, 586 (1978)).)

Larson responds that Novum is placing undue weight on the stamp and overlooking their historical relationship. According to Larson, its role had long been to "peer review" drawings Novum submitted to it to ensure that they met the minimum requirements of the jurisdiction's building code. (ECF No. 31 at 12.) Larson's sealing of

5

the drawings provided to it simply verified that the drawings met the minimum standards for the jurisdiction's building code. (*Id.*) Had it considered Larson to be the engineer of record, Novum would have provided the weld-depicting fabrication drawings to Larson. (*Id.*) At a minimum, Larson contends, issues of fact exist as to whether Larson was serving as the engineer of record for the atrium project, which precludes entering summary judgment for Novum. (*Id.*)

Novum argues that, even if Larson's duty of care was merely as a "peer reviewer," it still was negligent. (ECF No. 26 at 16.) According to Novum, even a peer reviewer would have been obligated to identify any missing structural information in the plans it was reviewing. (ECF No. 26 at 16.)

As suggested by the lack of citation in its briefs to any authority recognizing its theory that Larson is liable as a result of having stamped the drawings which Novum provided to it, Novum's theory appears novel. In an effort to establish the duty of care Larson owed it, Novum points to Wisconsin statutory and administrative code provisions regarding an engineer stamping design drawings. (ECF No. 26 at 13-14 (discussing Wis. Stat. § 443.17 and Wis. Admin. Code. § A-E8.10(1)).) Statutes and regulations may indicate the duty of care expected of a professional. *See Chapman by Chapman v. Mut. Serv. Cas. Ins. Co.*, 35 F. Supp. 2d 699, 705 (E.D. Wis. 1999) (citing *Grube v. Daun*, 173 Wis. 2d 30, 52, 496 N.W.2d 106, 113 (Ct. App. 1992); *Meas v. Young*, 142 Wis. 2d 95, 417 N.W.2d 55 (Ct. App 1987)).

Wisconsin Statute § 443.17 provides:

> No person who is registered under this chapter to practice … professional engineering may impress his or her seal or stamp upon documents which have not been prepared by the person or under his or her direction and control, knowingly permit his or her seal or stamp to be used by any other person or in any other manner knowingly aid or abet the unauthorized practice of … professional engineering … by persons not authorized under this chapter.

Similarly, Wisconsin's Administrative Code Section A-E 8.10(1) provides:

> No … professional engineer … may sign, seal or stamp any plans, drawings, documents, specifications or reports for architectural, landscape architectural, professional engineering or design practice which are not prepared by the registrant or under his or her personal direction and control.

The above-quoted provisions prohibit an engineer from stamping drawings that were not prepared under his direction and control. If he does so, he is subject to professional discipline. *See Examining Bd. of Architects, Prof'l Eng'rs, Designers & Land Surveyors of Wis. v. Schuurmans*, 99 Wis. 2d 806, 301 N.W.2d 461 (Ct. App. 1980) (unpublished). However, Novum argues that the provisions also establish that an engineer who stamps a drawing is liable as if that drawing were prepared under his "personal direction and control." Moreover, Novum argues that this liability extends not only to innocent third parties who were unaware that the stamping engineer did not prepare the drawing but also to a party who knew that the engineer's review was limited or knew the engineer had not actually reviewed the entire design.

7

The court finds Novum's arguments stray far from the text and intent of the relevant statute and regulation. Although the court accepts that the provisions are relevant to the general standard of care owed by a professional engineer, the court is not persuaded that the provisions establish that Larson is liable to Novum for errors in the weld design, which was not depicted on the drawings Larson stamped. This is especially true when, as here, the plaintiff is aware that the engineer did not design or review the relevant detail or component which was not included in the drawings the engineer stamped.

In an effort to show that Larson's duty of care extended to drawings beyond just those provided to it, Novum attempts to show that, by stamping the drawings, Larson was the "engineer of record" for the overall project. However, Novum has not established that "engineer of record" is an established term of art with a fixed and universally accepted understanding or a scope of duties that necessarily attach. Thus, the court finds Novum has failed to establish that stamping a design document necessarily includes the duty to review and ensure the propriety of components necessary to that design. More than the semantics of the label attached to Larson's role, what matters is the understanding between and the reasonable expectations of the parties.

Evidence of this understanding can be found in the testimony Novum presents of certain Larson employees. For example, Ramdular, the Larson engineer who stamped

the drawings, agreed at his deposition that by stamping the plans he has "professional responsibility if the design does not meet the standards of the applicable building code[.]" (ECF Nos. 26 at 6; 32, ¶ 20.) Ramdular testified that he understood that if he made a mistake in a design he stamped and the design did not comply with the applicable building code, he would be responsible. (ECF Nos. 26 at 6; 32, ¶ 20.) This testimony is consistent with Larson's position that its review was limited to the drawings Novum provided and Ramdular's stamp reflected only his professional judgment that those drawings complied with the local building code.

Further, Ramdular stated that Schultz, Ramdular's colleague who actually reviewed the plans, would have questioned Novum's engineers and done the calculations himself if the plans did not include details as to whether the welds were sufficient to carry the load. (ECF Nos. 26 at 8-9; 32, ¶ 36.) Shultz, however, testified that it was unnecessary to do any calculations of the welds because he assumed the welds were complete joint penetrating welds, a type of weld that is as strong as the base material. Thus, it was necessary only to assess the load-bearing strength of the base material. (ECF Nos. 31 at 3; 30-1 at 15.)

The court finds that disputes of material fact preclude summary judgment in Novum's favor. Novum has failed to show that Larson's duty in reviewing Novum's work included seeking out the drawings depicting the weld and ensuring those welds were sufficient to carry the loads.

To the extent the nondelegable duty doctrine, *see, e.g.*, *Chapman by Chapman v. Mut. Serv. Cas. Ins. Co.*, 35 F. Supp. 2d 699, 706-07 (E.D. Wis. 1999), may be relevant to an engineer stamping design documents, the court cannot say that public policy behind that doctrine supports its application as between sophisticated peers. The parties could agree to limit Larson's duties to Novum, and, given their historic relationship, a reasonable finder of fact could conclude that they agreed to do just that. That is, a reasonable jury could conclude that Larson's obligations to Novum did not include ensuring the integrity of design documents Novum never gave to Larson. By stamping the design documents provided to it, Larson was certifying merely that those specific documents met the standards of the relevant building code.

Moreover, the nondelegable duty doctrine does not preclude a defendant from seeking contribution from a joint tortfeasor. *Barry v. Emplrs. Mut. Cas. Co.*, 2001 WI 101, ¶44, 245 Wis. 2d 560, 630 N.W.2d 517. A reasonable finder of fact could conclude that, by designing the deficient weld and never submitting those plans to Larson for review, Novum was, at a minimum, jointly liable for the costs of the repair.

In sum, the court finds that Novum has failed to demonstrate that, as a matter of law, Larson owed Novum a duty that included ensuring the sufficiency of the welds used to connect the trusses to the edge beam.

**3.2. Contract**

Novum also alleges that Larson breached their contract by approving drawings that did not include the weld details. In the absence of a written contract to which the court may turn to assess the scope of Larson's responsibilities, Novum argues that there is no dispute that Larson agreed to be the engineer of record. It argues that Larson did not meet its obligations because it approved drawings "that contained no details for structurally critical welds." (ECF No. 26 at 20.)

If Novum contracted with Larson for Larson to undertake a complete review of Novum's design, Larson may have breached this contract by not reviewing the weld designs. However, given the fact that Novum did not provide the weld designs to Larson, a question of fact exists as to whether a review of the weld designs was within the scope of the parties' contract.

For the same reason that Novum is not entitled to summary judgment on its tort claim, it likewise is not entitled to summary judgment on its contract claim: disputes of material fact exist as to the scope of Larson's obligations to Novum. There is evidence from which a reasonable finder of fact could conclude that Novum and Larson agreed that Larson would review only those drawings which Novum provided to it and ensure that they complied with the local building code.

**IT IS THEREFORE RECOMMENDED** that Novum Structures, LLC's "Motion for Partial Summary Judgment" (ECF No. 25) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 30th day of April, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge